**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**REGIS L. DICKERSON,**

    **Petitioner,**

                **Case No. 2:15-cv-0068**
  **v.**             **Judge Frost**

**WARDEN, ROSS CORRECTIONAL**
**INSTITUTION,**

    **Respondent.**

### OPINION AND ORDER

   Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition* (ECF No. 1), as amended, *see Order* (ECF No. 12), Respondent's *Return of Writ* (ECF No. 9), Petitioner's *Reply to Return of Writ* (ECF No. 11), and the exhibits of the parties.  For the reasons that follow, the petition for a writ of habeas corpus is **DENIED** and this action is hereby **DISMISSED.**

### Facts and Procedural History

   The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> In September 2010, appellant was indicted for two counts of murder with firearm specifications for the killing of Corey Hart. The indictment also contained two counts of felonious assault with specifications based on incidents occurring on separate dates and involving different victims; however, the trial court granted appellant's motion to sever those counts, and the case proceeded to trial on the murder counts. The following evidence was presented at the murder trial.
>
> Officer Matthew Hauser testified that, during the early morning hours of August 17, 2010, he was dispatched to the Woods Bar in Columbus in response to a reported shooting. Upon arrival, he observed several females in the parking lot screaming and pointing

to a man, later identified as Hart, leaning up against a car going in and out of consciousness. Officer Hauser saw what appeared to be a ring of blood surrounding a bullet hole in Hart's t-shirt. Hart was transported to Grant Hospital, where he was declared dead shortly thereafter. A deputy coroner with the Franklin County Coroner's Office testified that the cause of death was a single gunshot wound to the abdomen; the manner of death was homicide.

The state presented two eyewitnesses who testified that they observed appellant fire a single gunshot into Hart's abdomen at close range. The first was Roshonna Perry (a.k.a."Diamond"), appellant's close friend since childhood. Perry testified that she arrived at the Woods Bar earlier that night and met with appellant, his girlfriend, his cousin, and two of his friends. Later in the evening, Perry began arguing with one of appellant's friends, Mike Myers, whom she had fought with in the past. The argument became physical, and appellant attempted to hold Perry back while others pushed Myers out of the bar. As Myers was being moved outside, Perry hit him in the head with brass knuckles. Myers was "bleeding everywhere" after Perry punched him, and he got in the nearby SUV owned by appellant's girlfriend. (Tr. 236.)

Perry continued yelling at Myers when she was approached by Hart, the father of her best friend's sister. Hart, who was also at the bar that night, asked Perry, "You good?," which apparently offended appellant. (Tr. 247.) Appellant told Hart, "This don't got nothing to do with you, this is family shit." (Tr. 249.) According to Perry, the two men began to argue when, without warning, appellant pulled out a gun and shot Hart once in the middle of the chest. Perry had not seen Hart threaten appellant or display any weapons.

Perry initially fled the scene, but she quickly changed her mind and returned to care for Hart. She saw the SUV drive away and did not hear from appellant until a telephone conversation 45 minutes later. During the conversation, appellant told Perry, "That nigger ain't family, don't go up to the hospital to see him." (Tr. 257–58.) The next morning, Perry lied to police about the identity of the shooter in order to protect appellant. After speaking with her mother, however, Perry decided to contact police to tell them the truth. Perry later met with detectives and selected appellant out of a photo array.

The state's second eyewitness was appellant's cousin, Mikaelle Edwards, who went to the bar with appellant the night of the shooting. Edwards witnessed the fight between Perry and Myers

and sat with Myers in the SUV while appellant and Hart argued in the parking lot. According to Edwards, she tried to convince appellant to get in the car when appellant suddenly pulled out a silver revolver and fired a single shot into Hart's upper stomach. Like Perry, Edwards did not see Hart threaten appellant or carry any weapons.

Edwards testified that, after appellant got into the SUV, they drove away from the shooting. According to Edwards, appellant appeared calm after the shooting. While she was "hysterically crying" about what had happened, appellant assured her, "it is going to be all right." (Tr. 326.) Edwards did not speak with police until several weeks later, when she met with detectives and was presented with a photo array. After looking at the array, Edwards positively identified appellant as the shooter.

After the state's case-in-chief, appellant presented the testimony of several witnesses, including two employees of the bar who denied seeing appellant that night or hearing any gunshots. Additionally, appellant's girlfriend, Mykesha Loney, testified that she was not at the bar or with appellant that evening.

The jury returned from deliberations to find appellant guilty of both murder counts with the attendant firearm specifications. At sentencing, the trial court merged the murder counts and imposed a total prison sentence of 18 years to life.

II. Assignments of Error

In a timely appeal, appellant advances the following assignments of error for our consideration:

I.THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF MURDER AS THAT VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND DENIED HIM A FAIR TRIAL AND DUE PROCESS OF LAW PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE

OHIO CONSTITUION BY NOT ALLOWING HIM TO
PRESENT EXCULPATORY EVIDENCE AND TO PRESENT A
COMPLETE DEFENSE TO THE CHARGES.

*State v. Dickerson,* No. 11AP-789, 2012 WL 2928667, at *1-2 (Ohio App. 10th Dist. July 19,

2012).  On July 12, 2012, the appellate court affirmed the judgment of the trial court.  *Id*.  On

November 28, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as

not involving any substantial constitutional question.  (ECF No. 9-1, PageID# 253); *State v.*

*Dickerson*, 138 Ohio St.3d 1490 (2012).

On October 3, 2012, Petitioner filed an application to reopen the appeal pursuant to Ohio

Appellate Rule 26(B).  (ECF No. 9-1, PageID# 254.)  Petitioner alleged that he had been denied

the effective assistance of appellate counsel because his attorney failed to raise additional claims

on appeal: that the trial court denied him the right to counsel when it refused to permit his

counsel of choice to participate; that the prosecutor failed to timely disclose witness identities

and statements; that he was denied a fair trial because a juror read a newspaper headline referring

to his 2004 acquittal in a different case during trial; that the trial court abused its discretion when

it reprimanded the jury for questions during deliberations; and that the prosecutor failed to

provide the correct address for a key exculpatory witness.  (PageID# 254-63.)  On February 14,

2013, the appellate court denied Petitioner's Rule 26(B) application.  (PageID# 281.)  Petitioner

apparently did not file an appeal from that decision.

On July 17, 2012, Petitioner filed a *pro se* petition to vacate or set aside the judgment of

conviction. The Ohio Tenth District Court of Appeals summarized the facts and procedural

history of that proceeding:

> [Appellant alleges] the following nine claims for relief: (1) the
> state withheld the names and addresses of witnesses until the day
> of trial, (2) trial counsel's failure to object to the non-disclosure of
> witnesses constituted ineffective assistance of counsel, (3) the jury

4

was exposed to prejudicial newspaper headlines which revealed appellant had previously been acquitted of murder, (4) the prosecution engaged in misconduct at trial by informing the jury that two individuals did not know each other, (5) trial counsel was ineffective in failing to investigate the name of a potential witness provided to counsel by appellant prior to trial, (6) trial counsel was ineffective in providing appellant misleading information regarding a plea bargain, (7) appellant was denied his right to due process because several members of the victim's family had lunch at the same restaurant as several of the jurors, (8) the state failed to provide the correct address of a key witness until after the start of the trial, and (9) trial counsel was ineffective in failing to call a potential witness, Tony Reno, to testify.

On July 30, 2012, the state filed a memorandum contra appellant's motion to vacate or set aside judgment, arguing that appellant had not provided sufficient evidence to warrant a hearing on the petition, that the claims should have been raised on direct appeal, and that appellant had failed to demonstrate ineffective assistance of trial counsel. By decision and entry filed February 20, 2013, the trial court denied appellant's petition.

On appeal, appellant sets forth the following five assignments of error for this court's review:

FIRST ASSIGNMENT OF ERROR

THE LOWER COURT ERRED IN NOT GRANTING POSTCONVICTION RELIEF BASED ON APPELLANT'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL THEREBY DENYING HIM RIGHT TO COUNSEL GUARANTEED BY THE 6TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION.

SECOND ASSIGNMENT OF ERROR

THE LOWER COURT ERRED IN NOT GRANTING POSTCONVICTION RELIEF BASED UPON APPELLANT'S CLAIM OF JUROR MISCONDUCT THEREBY DENYING HIM RIGHT TO AN IMPARTIAL JURY GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SIMILAR PROVISIONS OF THE OHIO CONSTITUTION.

THIRD ASSIGNMENT OF ERROR

THE LOWER COURT ERRED IN NOT GRANTING
POSTCONVICTION RELIEF BASED ON APPELLANT'S
FOURTH CLAIM FOR RELIEF, PROSECUTORIAL
MISCONDUCT, THEREBY DENYING HIM DUE PROCESS
OF LAW GUARANTEED BY THE FOURTEENTH
AMENDMENT TO THE UNITED STATES CONSTITUTION.

FOURTH ASSIGNMENT OF ERROR

THE LOWER COURT ERRED IN NOT GRANTING RELIEF
BASED ON APPELLANT'S SEVENTH CLAIM FOR
POSTCONVICTION RELIEF THEREBY DENYING HIM
RIGHT TO AN IMPARTIAL JURY GUARANTEED BY THE
SIXTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION AND SIMILAR
PROVISION OF THE OHIO CONSTITUTION.

FIFTH ASSIGNMENT OF ERROR

THE LOWER COURT ERRED IN NOT GRANTING
APPELLANT AN EVIDENTIARY HEARING THEREBY
DENYING HIM DUE PROCESS AND EQUAL PROTECTION
OF THE LAW GUARANTEED BY THE FOURTEENTH
AMENDMENT TO THE UNITED STATES CONSTITUTION
AND SIMILAR PROVISIONS OF THE OHIO CONSTITUTION.

*State v. Dickerson,* No. 13AP-249, 2013 WL 5451618, at *1-2 (Ohio App. 10th Dist. Sept. 30,

2013).  On September 30, 2013, the appellate court affirmed the judgment of the trial court.  *Id.*

On February 19, 2014, the Ohio Supreme Court declined review of that decision.  *State v.*

*Dickerson*, 138 Ohio St.3d 1417 (2014).

On January 8, 2015, Petitioner filed this action for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  He alleges that he was denied a fair trial because the trial court prohibited him

from presenting evidence that another person had been identified as the shooter from a

photograph line-up (claim one); that his murder conviction was against the manifest weight of

the evidence and that the evidence is constitutionally insufficient evidence to sustain the

conviction (claim two); that he was denied the effective assistance of counsel because his trial attorney failed to object to the State's non-disclosure of key witnesses (claim three); that he was denied a fair trial based on juror misconduct because a juror read a newspaper headline during trial (claim four); that he was denied his right to counsel when the trial court refused to permit his counsel of choice to participate (claim five); that he was denied the effective assistance of appellate counsel (claim six); that he was denied a fair trial because the prosecution failed to disclose witness identities and statements until the start of trial (claim seven); that the trial court abused its discretion by reprimanding the jury for its questions during deliberations (claim eight); that he was denied a fair trial because the State failed to provide a correct address for Titus Turner, a key exculpatory witness (claim nine); that the state courts erred in not granting postconviction relief based on his claims of ineffective assistance of counsel, juror misconduct, and prosecutorial misconduct (claims ten, eleven, twelve); that the state courts erred in not granting him an evidentiary hearing in his postconviction proceedings (claim thirteen); that the state courts erred in not granting postconviction relief based on his claim of denial of the right to an impartial jury (claim fourteen); and that he was denied the effective assistance of trial counsel because his attorney failed to interview and subpoena one Tony Reno (claim fifteen). Respondent contends that Petitioner's claims are not cognizable in habeas proceedings, are procedurally defaulted, or are without merit.

## Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the

petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman,* 501 U.S. at 724; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must decide whether the state courts actually enforced the state procedural sanction. Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely. *Id.* at 138. Finally, if the court determines that a state procedural rule was not complied with and that the procedural rule is adequate and independent, then the petitioner may still obtain review of the merits of his claims if the petitioner establishes: (1) a substantial cause for the default and (2) that he was actually prejudiced by the alleged constitutional error. *Id.* "Cause" under this test "must be something external to the petitioner, something that cannot fairly be attributed to him[, *i.e*.,] some factor external to the defense [that] impeded [ ] efforts to comply with the State's procedural rule." *Coleman,* 501 U.S. at 753. This "cause and prejudice" analysis also applies to a failure to raise or preserve issues for review at the appellate level. *Id.* at 750.

Nevertheless, "'[i]n appropriate cases, the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)).  Petitioners who fail to show cause and prejudice for a procedural default are nonetheless entitled to review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir. 2001).  This fundamental miscarriage of justice exception requires a showing that "in light of [ ] new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 329 (1995).

In claim three, Petitioner alleges that he was denied the effective assistance of counsel because his trial attorney failed to object to the State's nondisclosure of several key witnesses.  In claims four and eleven,[1] Petitioner alleges that he was denied a fair trial because of juror misconduct and the denial of his right to an impartial jury because of a juror's reading of a newspaper headline during trial.  In claim five, Petitioner alleges that he was denied his right to counsel because the trial court refused to permit his counsel of choice to participate.  In claim seven, Petitioner alleges that he was denied a fair trial because the prosecutor waited until the start of trial to disclose witness identities and statements.  In claim eight, Petitioner alleges that the trial court improperly reprimanded the jury for asking questions during deliberations.  In claim nine, Petitioner alleges that he was denied a fair trial because the State provided an

---

[1] In claim eleven, Petitioner alleges that "[t]he lower court erred in not granting post conviction relief" based on his claim of juror misconduct. *Petition* (ECF No. 1, PageID# 19.)  Respondent argues that this claim, as well as habeas corpus claims ten, twelve, and fourteen, therefore raise issues regarding alleged errors in post conviction proceedings that are not cognizable in habeas corpus. *Return of Writ* (ECF No. 9, PageID# 82.)  However, in the view of this Court, Petitioner actually contends that it is his underlying claims that warrant relief and that the state courts improperly rejected his claims as barred under Ohio's doctrine of *res judicata. See Petition* (ECF No. 1, PageID# 19-20.)  This Court will therefore address the merits of these claims.

incorrect address for one Titus Turner, who had identified a different person as the shooter in a photographic line-up.  In claim fifteen, Petitioner alleges that he was denied the effective assistance of counsel because his trial attorney failed to interview and subpoena as a defense witness one Tony Reno.[2]  Petitioner appears to raise this same allegation in claim ten.[3]

All of these claims, being readily apparent from the face of the record, should have been raised on direct appeal, but were not.  Further, Petitioner may now no longer present any of the foregoing claims to the state courts by operation of Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce this procedural rule due to the nature of Petitioner's procedural default.

Petitioner did attempt to present some of these claims in his petition for post conviction relief; however, the state appellate court held that the claims were barred from review in those proceedings under Ohio's doctrine of *res judicata*.  The state appellate court declined to consider the merits of Petitioner's claim of the denial of the effective assistance of trial counsel based on his attorney's failure to call Tony Reno as a defense witness:

> [A]ppellant argued that trial counsel was ineffective for failing to interview Tony Reno and call him as a witness. Appellant acknowledged, however, that Reno's statements to police were provided during discovery. The trial court found that the issue under this claim could have been raised on direct appeal, and we agree that this claim was barred under the doctrine of *res judicata*.

---

[2] To the extent that this claim may be based on matters outside the record, the claim nonetheless fails to provide a basis for relief. *See infra*.

[3] In claim ten, Petitioner refers to defense counsel's failure to call an "alibi witness," indicating that he raised this same claim in post conviction proceedings.  *Petition* (ECF No. 1, PageID# 19.)  The Court presumes, therefore, that Petitioner is referring to counsel's failure to call Tony Reno as a defense witness.  Petitioner does not refer to, and this Court is unable to locate in the record, any indication of another alleged alibi witness.

*State v. Dickerson*, 2013 WL 5451618, at *5.[4]

The state appellate court also affirmed the trial court's denial, as barred under Ohio's doctrine of *res judicata,* of Petitioner's claim that he was denied the effective assistance of trial counsel based on his attorney's failure to object to the State's non-disclosure of witnesses:

> [A]ppellant argued before the trial court that the state refused to reveal the identities of its two key witnesses, Roshonna Perry and Mikaelle Edwards prior to the commencement of trial, and that trial counsel was ineffective in failing to object to the non-disclosure of this evidence. While acknowledging that the state invoked the procedures for non-disclosure, pursuant to Crim.R. 16(D), appellant argued that withholding discovery until the day of trial violated his right to due process. He further argued in the petition that Crim.R. 16(D) was unconstitutional.
>
> In denying these two claims, the trial court determined that they could have been raised on direct appeal. We agree. Under Ohio law, where a defendant, "represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief." (Emphasis sic.) *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982), syllabus, modifying *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976).
>
> In the present case, appellant, who was represented by new counsel on appeal, could have raised Crim.R. 16 discovery issues, as well as trial counsel's handling of such issues on direct appeal. *See, e.g.*, *State v. Hamilton*, 2d Dist. No. C.A. 3015 (Dec. 29, 1993) (defendant failed to offer any evidence *dehors* the record to establish ineffective assistance of counsel claim based on failure to disclose materials as required by Crim.R. 16); *State v. Wooten*, 10th Dist. No. 91AP–322 (Dec. 31, 1991) (non-compliance with Crim.R. 16 "is an appealable issue," and "*res judicata* precludes a defendant from asserting issues in post-conviction proceedings which could have been raised on direct appeal"). (Emphasis sic.)

---

[4] Petitioner claims that Tony Reno told police that Rashonna Perry was the shooter. *Affidavit of Regis L. Dickerson* ECF No. 9-1, PageID# 303.) However, aside from Petitioner's unsupported *Affidavit* (ECF No. 9-1, PageID# 301), the record offers no support for this allegation. Further, as detailed by the state appellate court, two eyewitnesses identified Petitioner as the shooter. Therefore, the record fails to support a claim of the denial of the effective assistance of counsel under the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984)(to establish ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense and deprived him of a fair trial).

> Furthermore, the issue as to the disclosure of these witnesses was previously raised by appellant and addressed by this court in the context of his application for reopening. Specifically, in *Dickerson II,* appellant argued that his appellate counsel was ineffective in not challenging the prosecution's failure to disclose the identification and witness statements of Perry and Edwards. This court held that appellant's argument "overlooks the fact that the state did provide both witnesses' names and summaries before trial." *Id.* at ¶ 10, 341 N.E.2d 304. We further noted that the defense interviewed Edwards prior to trial and that, while "the state withheld Perry's address, it informed the court that it did so based on threats she received that were believed to be directed by appellant." *Id.* Thus, we held that appellate counsel was "not required to dilute his existing assignments of error with such weak arguments." *Id.* Accordingly, the trial court in the instant case did not abuse its discretion in denying appellant's first and second claims.

*State v. Dickerson*, 2013 WL 5451618, at *3.

The state appellate also affirmed the trial court's rejection, as barred under Ohio's doctrine of *res judicata,* of Petitioner's claim that he had been denied a fair trial based on a juror's exposure to a newspaper headline:

> [A]ppellant argued he was denied due process when the jury was exposed to newspaper headlines revealing he had previously been acquitted of murder. Appellant acknowledged that the trial court questioned one of the jurors at trial, but appellant maintained the trial court failed to ask follow-up questions, and that his trial counsel was ineffective in failing to object to the court's lack of an adequate inquiry.

> However, as noted by the trial court, this issue was previously raised by appellant in his application for reopening. In *Dickerson II* at ¶ 11, this court rejected appellant's claim that the trial court failed to conduct a complete inquiry with respect to the newspaper article at issue, holding in pertinent part:

> The trial court did conduct an inquiry as to whether any of the jurors "read or saw the article in the Columbus Dispatch." (Tr. Vol. IV, 481.) One juror responded, "I saw it was there, but I didn't read it." (Tr. Vol. IV, 481.) The trial court then asked if anyone "read it at all," and, when no one responded, the trial court proceeded with

closing arguments. (Tr. Vol. IV, 481.) The negative response given by the jury obviated the need to conduct any further inquiry.

Accordingly, as this issue was raised and considered in appellant's application for reopening, the trial court did not err in denying the third claim as barred by *res judicata*.

*Id*. at *4.

Similarly, the state appellate court held that Ohio's doctrine of *res judicata* foreclosed Petitioner's claim that the State had improperly failed to provide him with a correct address for prosecution witness Titus Turner:

[A]ppellant argued that the state failed to disclose the address of a key witness, Titus Turner. According to appellant, the state did not provide the correct address until after the start of the trial.

The trial court denied this claim on the basis that it was previously considered. We agree. In appellant's application for reopening, appellant argued that the state failed to produce the correct address for Turner, "and that his trial counsel was ineffective for not requesting a continuance to locate Turner." *Dickerson II* at ¶ 14. In addressing that issue, this court held in relevant part:

[A]ppellant concedes that the state, after discovering the error, provided him with Turner's correct address during trial. The transcript reveals that, after appellant's trial counsel verified the address, an investigator went to the residence only to discover it was vacant. Because the record shows that Turner's whereabouts were still unknown, we decline to assume that a mid-trial continuance would have necessarily uncovered Turner's whereabouts. * * * Even if appellant could show that his trial counsel was somehow deficient for not requesting such a continuance, appellant cannot show a reasonable probability of a different outcome had a continuance been requested, especially where Turner's purported testimony (that he identified someone other than appellant in the photo array) was contradicted by two witnesses who identified appellant in a photo array.

Thus, this court previously determined that appellant could not demonstrate prejudice as a result of trial counsel's failure to request a continuance. Upon review, the trial court did not err in concluding that appellant's eighth claim for relief was barred by the doctrine of *res judicata*.

*Id.* at *4-5.

Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman*, at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v.  Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour* v. *Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Therefore, Petitioner has procedurally defaulted claims three, four, five, seven, eight, nine, ten, eleven, and fifteen.

Petitioner may still secure review of the merits of these claims if he demonstrates cause for his failure to follow the state procedural rules as well as actual prejudice from the constitutional violations that he alleges. *See Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). As cause for his procedural default, and in habeas corpus claim six, Petitioner alleges the denial of the effective assistance of appellate counsel.  The constitutionally ineffective assistance of counsel may constitute cause for a procedural default so long as the claim of ineffective assistance of counsel has itself been presented to the state courts and is not procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (citing *Murray*, at 488–89). Petitioner has attached a letter from his appellate counsel, Attorney Todd Barstow, dated September 29, 2011, in which Attorney Barstow indicates that several of the issues Petitioner had discussed with him should be raised in a petition for post conviction relief.  Barstow also advised Petitioner to contact the State Public Defender's Office to discuss those issues, because he represented Petitioner only in his direct appeal and not on any post conviction matters.  (ECF No. 11-3, PageID# 1096.)  Petitioner has also attached an April 11, 2012, letter from Attorney Barstow advising Petitioner that his claim of juror misconduct and claim of prosecutorial misconduct based on the prosecutor's alleged failure to provide a correct address had been waived for purposes of appeal, but could still be raised in post conviction proceedings.  Attorney Barstow further explained that he would not be raising on appeal an issue regarding the trial court's response to questions from the jury, because he did not view the claim to be potentially meritorious.  (*See* ECF No. 11-3, PageID# 1094.)

Petitioner has procedurally defaulted his claim of ineffective assistance of appellate counsel because he failed to appeal the appellate court's February 14, 2013, denial of his application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  He may now no longer do so because Ohio does not permit delayed appeals in Rule 26(B) proceedings.  *See* Ohio S.Ct.Prac.R. 7.01(A)(4)(c).

As cause for his failure to file a timely appeal with the Ohio Supreme Court, Petitioner alleges that he did not receive a copy of the appellate court's decision until Friday, March 22, 2013, and that the prison's law library was closed on Saturday and Sunday, March 23 and 24, 2013, leaving him with insufficient time to file an appeal with the Ohio Supreme Court by its due date of April 1, 2013.  *Petitioner's Reply* (ECF No. 11, PageID# 1077.)  Petitioner has attached a copy of a document, purportedly a Legal Mail Log from the Ross Correctional Institution, indicating that, on March 22, 2013, Petitioner received mail from the Franklin County Clerk of Courts.  (PageID# 1085.)  Petitioner has also attached a letter from the Clerk of the Ohio Supreme Court, dated April 23, 2013, indicating that documents received on April 22, 2013, were being returned to Petitioner because his appeal had been due on April 1, 2013.  (PageID# 1087.)

A prisoner's *pro se* status, a petitioner's ignorance of the law and of procedural requirements for the filing of an appeal, and limited access to a prison's law library do not constitute cause for a procedural default.  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004)(citing *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995)).  Even assuming that Petitioner did not receive notification of the appellate court's decision denying his Rule 26(B) application until March 22, 2013, this Court is not persuaded that Petitioner has established cause

for his procedural default.  Nothing in the record supports his claim that he was prevented from filing a timely appeal by April 1, 2013.

For example, in *Maciel v. Carter,* 22 F.Supp.2d 857 (N.D. Ill. 1998)*,* the petitioner argued that he had established cause for his six month delay in filing an appeal because "(a) the state court delayed notifying him of the disposition of his post-conviction petition; (b) the prison delayed forwarding the tardily-sent notice to [him]; and (c) because the prison was on lockdown, [he] was unable to communicate with others, obtain legal assistance, or research the law himself in order to prepare his own appeal."  The District Court held that Maciel had failed to establish cause for his procedural default, noting that, because he had received actual notice "just days before his notice of appeal was due," it could not be the State's fault that he filed an untimely appeal.  "Maciel needed only to reallege the allegations in his post-conviction petition, basically in 'form' fashion, and send it to the Illinois appellate court. He did not need to conduct extensive—indeed, any—research to do so. Nor did he require legal assistance." *Id.*

Here, Petitioner had at least one week in which to file his appeal from the appellate court's decision denying his appeal.  Like Maciel, Petitioner did not need to conduct further legal research in order to file a timely appeal.  *See also Hubbard v. Warden, London Correctional Institution*, No. 109cv550, 2010 WL 3931500, at *5 (S.D. Ohio Sept. 7, 2010)(where the petitioner conceded that he learned of the appellate court's decision well within the time frame for perfecting a timely appeal, he cannot show that his appellate counsel's failure to notify him of the decision caused him to miss the filing deadline); *but see Williams v. Roberts*, 2009 WL 57526, at *4 (N.D. Ill. Jan. 8, 2009)(Petitioner established cause for his procedural default when clerk sent notice to wrong prison institution, despite being notified of the petitioner's current address, and it was not received until after the time for filing an appeal had expired).

Further, the record fails to reflect that Petitioner is actually innocent, so as to justify a merits review of his procedurally defaulted claims. *See Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005)(to establish actual innocence, a petitioner must present new, reliable evidence that shows "that it is more likely than not that no reasonable juror" would have found him guilty beyond a reasonable doubt)(citing *Schlup,* at 327).

Claims three through eleven, and fifteen, are procedurally defaulted.

## Merits

Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state court determinations. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ⸺ U.S. ⸺, ⸺, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

18

28 U.S.C. § 2254(e)(1). *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013).

Moreover, a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law," 28 U.S.C. § 2254(d)(1), or that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). The United States Court of Appeals for the Sixth Circuit recently explained these standards:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the standards § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409, and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

Claim One

In claim one, Petitioner alleges that he was denied the right to present exculpatory evidence that a person by the name of Titus Turner identified another individual, not the Petitioner, as the shooter during the course of a photographic array presented by Columbus Police Detective Wachaleck.  Specifically, Petitioner complains that the trial court prohibited Wachaleck's testimony regarding Turner's identification.   The state appellate court rejected this claim, reasoning as follows:

> [A]ppellant argues that the trial court prohibited him from presenting exculpatory evidence and violated his right to present a complete defense. Appellant sought to prove that a man named Titus Turner identified someone else as the shooter in a photo array prepared by detectives. Because Turner's whereabouts were unknown, appellant attempted to introduce Turner's out-of-court

identification through Detective Robert Wachalek, who showed Turner the array. Sustaining the state's objection, the trial court excluded the evidence as inadmissible hearsay.

Generally, a trial court has broad discretion in deciding the admissibility of evidence, and a reviewing court should not disturb such decisions in the absence of an abuse of discretion that created material prejudice. *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Under this deferential standard, "[i]t is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *State v. Morris*, — – Ohio St.3d ——, 2012–Ohio–2407, ¶ 14.

Appellant conceded that Turner's out-of-court statement constituted hearsay under the definition in Evid.R. 803(C), but argued that the statement fell within the hearsay exception for public records and reports contained in Evid.R. 803(8). However, even if Turner's identification was contained in a report subject to the exception in Evid.R. 803(8), the statement would nonetheless remain inadmissible hearsay. "[H]earsay statements contained within a public record are not admissible unless the statements themselves are subject to a hearsay exception." *State v. Silverman*, 10th Dist. No. 05AP–837, 2006–Ohio–3826, ¶ 83, citing *State v. Walker*, 9th Dist. No. 14012 (Nov. 8, 1989).

Nor was the statement admissible under Evid.R. 801(D)(1)(c), governing prior statements of identification. That rule provides that a statement is not hearsay if "[t]he declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (c) one of identification of a person soon after perceiving the person, if the circumstances demonstrate the reliability of the prior identification." Evid.R. 801(D)(1)(c). Here, Turner did not testify at trial, and he was not subject to cross-examination. Thus, his testimony could not be considered admissible under Evid.R. 801(D)(1)(c). *See State v. Nevins*, 171 Ohio App.3d 97, 869 N.E.2d 719, 2007–Ohio–1511, ¶ 30 (2d Dist.) (quotations omitted) ("[i]dentification testimony is not admissible per Evid.R. 801(D)(1)(c) unless the person who made the out-of-court identification testifies at trial and is subject to cross-examination").

Appellant maintains that the exclusion of Detective Wachalek's testimony violated his right to present a complete defense under *Chambers v. Miss.*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). We disagree. In *Chambers,* the United States Supreme Court found a due process violation based on the combined application of Mississippi's "voucher rule," which prohibited the defendant from impeaching his own witness (who had confessed to the crime but repudiated his confession on the stand) and Mississippi's hearsay rule, which prohibited the defendant from introducing evidence that the witness made incriminating statements to three people. *Id.* at 302. The court emphasized its holding was narrowly confined to the "facts and circumstances" of the case and did not "signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures." *Id.*

Nothing in *Chambers* abolishes the hearsay rule or renders the out-of-court statements in this case admissible. To the contrary, *Chambers* actually recognizes the unreliability of out-of-court statements where, as here, the declarant does not testify and is not subject to cross-examination. The court found the availability of the declarant in that case to be an assurance of reliability that "significantly distinguishes" the case from those where the declarant was unavailable. *Id.* at 301. Therefore, we find *Chambers* to be materially distinguishable from the facts herein.

Contrary to appellant's view, *Chambers* "does not stand for the proposition that the accused is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). Because Turner's out-of-court identification was inadmissible hearsay, the exclusion of Detective Wachalek's testimony was neither an abuse of discretion nor a violation of appellant's right to present a complete defense.

*State v. Dickerson*, 2012 WL 2928667, at *4-5.

To the extent that Petitioner raises a claim regarding the alleged violation of state evidentiary rules, such claim fails to provide a basis for relief.   As a general matter, alleged errors of state law, especially allegedly improper evidentiary rulings, will not support a writ of habeas corpus. *See Estelle v. McGuire,* 502 U.S. 62 (1991); *see also Giles v. Schotten*, 449 F.3d

698, 704 (6th Cir. 2006). To be entitled to habeas relief, a petitioner must demonstrate that an evidentiary ruling violated more than a state rule of evidence or procedure. In order to prevail on such a claim, a petitioner must show that the evidentiary ruling was "so egregious that it resulted in a denial of fundamental fairness." *Giles*, 449 F.3d at 704 (citing *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)). Stated differently, "'[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.'" *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). A state court evidentiary ruling does not violate due process unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Giles,* 449 F.3d at 704 (citing *Coleman,* 268 F.3d at 439). The record fails to establish such circumstances here.

However, "[t]he right of an accused to present a defense. . . has long been recognized as 'a fundamental element of due process.'" *Vesey v. McQuiggin*, 587 Fed.Appx. 966, 972 (6th Cir. 2014)(citing *Washington v. State*, 388 U.S. 14, 19 (1967); *Holmes v. South Carolina*, 547 U.S. 319, 329–31 (2006); *Chambers,* at 302). An accused has the right at trial to present testimony that is relevant, material, and vital to the defense. *Washington v. Texas*, 388 U.S. 14, 23 (1967); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This right is not unlimited and is subject to reasonable restrictions imposed by the criminal process. *Id.*

> A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissable under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (quoting *Taylor v.* Illinois, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)); *see also Holmes,* 547 U.S. at 326 (recognizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair

> prejudice, confusion of the issues, or potential to mislead the jury"). State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (internal citations omitted). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interest in the criminal trial process." *Id*. When deciding if the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. The question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)); *see also Chambers*, 410 U.S. at 302.

*Chahine v. McQuiggin*, No. 2:09-cv-11419, 2012 WL 2094407, at *7 (E.D. Mich. June 11, 2012).

> [T]he defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability." *Chambers*, 410 U.S. at 302, 93 S.Ct. 1038. Generally, the defendant may not offer testimony that is "otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Nevertheless. . . the Supreme Court has held that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers,* 410 U.S. at 302, 93 S.Ct. 1038.

*Vesey v. McQuiggin*, 587 Fed.Appx. at 972.

In *Chambers*, 410 U.S. at 284, a third party had provided a written confession in connection with the murder for which Chambers was later convicted. He had also made three other admissions, before eventually recanting, that he had committed the murder. *Id.* at 297, 300-01. The Supreme Court held that the trial court deprived Chambers of his constitutional right to present a defense when it prohibited him from introducing this evidence and from cross-examining the man regarding his confessions to the murder. *Id.* at 291–93. In so holding, the

24

Supreme Court reasoned that the excluded testimony was not only critical to the defense but also bore assurances of trustworthiness sufficient to place it "well within" the rationale underlying the hearsay exception for declarations against interest.  *Id.* at 302.

In considering the holding and scope of *Chambers*, the United States Court of Appeals for the Sixth Circuit has stated, "[a] defendant may circumvent a state hearsay rule when certain necessary predicate circumstances—such as those articulated in *Chambers*—are present. . . . [W]here the contested testimony was 'critical' to the defense, where the testimony 'bore persuasive assurance of trustworthiness,' and where the testimony directly affected the ascertainment of the defendant's guilt, an exception must be made."  *Vesey,* 587 Fed.Appx. at 972 (citing *Chambers*, at 302).

Here, the record does not suggest that Turner's identification during the photo array bore any of the assurances of trustworthiness that were present in *Chambers*.  To the contrary, two eye witnesses, *i.e.,* Petitioner's close friend and cousin, identified Petitioner as the killer.  *See, e.g., Washington v. Renico*, 455 F.3d 722, 734-35 (6th Cir. 2006)(state court did not unreasonably apply federal law where excluded evidence did not bear indicia of reliability present in *Chambers)*; *Dillon v. Warden, Ross Correctional Inst*., 541 Fed.Appx. 599, 606 (6th Cir. 2013)(same).

Claim one is without merit.

Claim Two

In claim two, Petitioner alleges that his murder conviction is against the manifest weight of the evidence, and that the evidence is constitutionally insufficient to sustain his conviction.

A federal court may issue a writ of habeas corpus on behalf of a person in custody pursuant to the decision of a state court only if his custody is in violation of the Constitution or

laws of the United States. 28 U.S.C. § 2254(a). Thus, "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). A manifest weight of the evidence claim is an alleged error of state law that is not cognizable in this Court. Under Ohio law, "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . .'" *State v. Thompson*, 78 Ohio St.3d 380, 386 (Ohio 1997) (citations omitted). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* A federal habeas court, however, may not "reweigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court" because, in habeas proceedings, "[i]t is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citations omitted). Because this federal habeas court does not function as an additional state appellate court vested with the authority to conduct such an exhaustive review, Petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

Petitioner also alleges that the evidence is constitutionally insufficient to sustain his convictions. Petitioner argues that the State failed to produce any forensic or other direct evidence linking him to the crime scene or the victim, "especially given that no one else who was present at the bar on the night of the shooting can place [him] at the scene." *Petition* (ECF No. 1, PageID# 16.) He complains that his conviction was based only on conflicting testimony. The state appellate court rejected this claim, reasoning in relevant part as follows:

> In a sufficiency review, courts "do not assess whether the state's evidence is to be believed, but whether, if believed, the evidence

admitted at trial supports the conviction." *State v. Jordan*, 10th Dist. No. 11AP–691, 2012–Ohio–1760, ¶ 15, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216, 2002–Ohio–2126, ¶ 79–80; *see also State v. Were*, 118 Ohio St.3d 448, 890 N.E.2d 263, 2008–Ohio–2762, ¶ 135 (reiterating that credibility challenges are "not proper on review of evidentiary sufficiency"). Therefore, we reject appellant's argument regarding the sufficiency of the evidence and will review his credibility challenges under a manifest weight review.

Appellant claims Perry lacked credibility because she initially lied to police in order to protect appellant. A reasonable juror, however, could have found that Perry's decision to testify against her close friend actually heightened her credibility. Perry began her testimony in tears, saying it was difficult for her to testify against appellant because she "love[d] him like [her] brother." (Tr. 219.) Regardless, Perry became cooperative with police shortly after the shooting when she admitted being untruthful and identified appellant as the shooter. A jury is not prevented from believing a witness "'simply because the witness may have been, to some degree, uncooperative with the police.'" *State v. Jennings*, 10th Dist. No. 09AP–70, 2009–Ohio–6840, ¶ 56, quoting *State v. Darthard*, 10th Dist. No. 07AP–897, 2008–Ohio–2425, ¶ 14. "It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness." *State v. Haynes*, 10th Dist. No. 03AP–1134, 2005–Ohio–256, ¶ 24 (quotations omitted).

Appellant also points to the fact that Perry benefitted from her testimony. In exchange for Perry's truthful testimony, the state agreed to request probation in her unrelated prosecution for possession of cocaine and tampering with evidence. We find nothing about this agreement fatal to Perry's credibility. Perry had already identified appellant as the shooter to detectives by the time she entered into the agreement with the state. Moreover, she pleaded guilty to those offenses before the shooting even occurred and received no reduction in charges from the state. "[T]he jury was free to assess [her] credibility in light of any consideration [she] received from the state." *Jennings* at ¶ 56, citing *State v. Bliss*, 10th Dist. No. 04AP–216, 2005–Ohio–3987, ¶ 26.

Next, appellant claims Edwards lacked credibility because she admitted to drinking and smoking marijuana the night of the shooting. However, there was no evidence that either substance impaired her memory of the shooting. Edwards' testimony was largely consistent with that of Perry; both denied seeing Hart

threaten appellant or display any weapons, and both testified seeing appellant fire a single shot to Hart's abdomen. Their testimony was further corroborated by the deputy coroner, who concluded that Hart was killed by a single gunshot wound to the abdomen. Under these circumstances, the jury could reasonably find the testimony of Perry and Edwards to be credible.

For the reasons stated above, appellant has failed to establish that his conviction was unsupported by sufficient evidence[.]

*State v. Dickerson*, 2012 WL 2928667, at *3-4.

A criminal defendant may be convicted consistent with the United States Constitution only if the evidence adduced at trial is sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson,* 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, 443 U.S. at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume, even if it does not appear on the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. (quoting *Jackson,* at 326).

Further, this Court must afford a "double layer" of deference to state court determinations regarding the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due the jury's finding of guilt because the standard, established by *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still

defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Plainly, the evidence presented at Petitioner's trial was constitutionally sufficient to sustain Petitioner's conviction, and the state appellate court did not unreasonably deny Petitioner's claim so as to warrant habeas corpus relief.  Two eyewitnesses to the shooting observed Petitioner fire a single gunshot into Hart's abdomen at close range, resulting in his death.  Neither witness observed the victim threaten Petitioner or display a weapon.  Petitioner does not dispute these factual determinations, nor has he met his burden of rebutting the correctness afforded the state appellate court's factual findings as required under the AEDPA. Construing this evidence in the light most favorable to the prosecution, as this Court is required to do, the evidence was constitutionally sufficient to sustain Petitioner's conviction.

Claim two is without merit.

Claim Twelve

In claim twelve, Petitioner alleges that he was denied a fair trial because of prosecutorial misconduct, *i.e.,* the prosecutor told the jury that prosecution witnesses Roshonna Perry and Mikaelle Edwards did not know each other when, Petitioner alleges, "the two were lovers." *Petition* (ECF No. 1, PageID# 20.)  The state appellate court rejected this claim as follows:

> [A]ppellant argued that the prosecutor engaged in misconduct by misinforming the jury that Perry and Edwards did not know each other. In his petition, appellant argued he had informed his trial counsel that Inga McMorris was a potential defense witness available to testify. According to appellant, had trial counsel contacted McMorris, the defense would have been able to refute the state's assertion that Perry and Edwards did not know each other. In support, appellant submitted with his petition a "letter" containing the signature of McMorris in which McMorris states that Perry "was romantically involved with a woman named Mikki."

> Appellant does not indicate how the prosecution knew or should have known that Perry and Edwards were involved in a relationship at the time of trial. Arguably, however, the facts alleged by appellant as a basis for his claim of prosecutorial misconduct were known to him at trial and at the time for filing his direct appeal. Further, even accepting the averments in the letter by McMorris, appellant has not demonstrated how defense counsel's failure to call this individual as a witness to show that Perry and Edwards knew each other would have resulted in a different outcome. Because appellant has failed to demonstrate prejudice, the trial court did not err in denying these claims.

*State v. Dickerson*, 2013 WL 5451618, at *4.

The scope of federal habeas corpus review of a claim of prosecutorial misconduct is narrow. A federal court does not sit as an appellate court employing supervisory powers to rectify ordinary trial error in cases before it for habeas review. *Donnell v. DeChristoforo* 416 U.S. 637 (1974). Rather, the Court must consider only whether the prosecutor's conduct was so egregious as to deny the petitioner fundamental fairness. *Id.* at 642–43; *Martin v. Foltz*, 773 F.2d 711, 716–17 (6th Cir. 1985); *Angel v. Overberg*, 682 F.2d 605, 607 (6th Cir. 1982) (*en banc*). This determination is made by evaluating the totality of the circumstances surrounding the case. *Angel v. Overberg*, 682 F.2d at 607.

> Factors relevant in making this inquiry are: the degree to which the remarks may tend to mislead the jury and to prejudice the accused; whether the remarks were isolated or extensive; whether they were deliberately placed before the jury; and the strength of the case against the accused. Finally, this Court notes the "extreme nature of the prosecutorial misconduct required for a federal court to issue the writ."

*Martin v. Foltz*, 773 F.2d at 716 (citations omitted) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 120 (6th Cir. 1979)).  Upon consideration of the totality of the circumstances, and for the reasons stated by the state court of appeals, Petitioner has failed to establish that his claim of prosecutorial misconduct warrants relief.

The record does not indicate that the prosecution had any reason to know of an alleged relationship between Perry and Edwards.   Further, the record does not establish that the admission of any such evidence would have assisted the defense or cast doubt on the testimony of Perry and Edwards that they saw Petitioner shoot and kill Corey Hart.

Claim twelve is without merit.

Claim Thirteen

In claim thirteen, Petitioner alleges that the trial court unconstitutionally refused to grant him an evidentiary hearing in his post conviction proceedings.  This claim fails to provide a basis for habeas corpus relief.  "[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review."  *Farrow v. Anderson*, No. 1:08CV1429, 2009 WL 3004024, at *5 (N.D. Ohio Sept. 15, 2009)(citing *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)).   This is because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'"  *Id.* (quoting *Kirby*, 794 F.2d at 246) .

> It is settled law in the Sixth Circuit that alleged errors in post-conviction proceedings, such as the failure to grant evidentiary hearings, are outside the scope of federal habeas review. *Cornwell v. Bradshaw,* 559 F.3d 398, 411 (6th Cir. 2009) (petitioner's claim that the state court improperly denied him an evidentiary hearing not cognizable in habeas corpus proceedings); *Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007); *Kirby v. Dutton,* 794 F.2d 245, 247 (6th Cir.1986) ("We decline to allow the scope of the writ to reach this second tier of complaints about deficiencies in state post-conviction proceedings.").

*Johnson v. Lazaroff*, No. 1:15CV43, 2016 WL 791609, at *15 (N.D. Ohio Jan. 6, 2016).

Accordingly, Petitioner's claim that the state court erred when it failed to provide him with an

evidentiary hearing in post conviction proceedings fails to provide a basis for federal habeas corpus relief.

Claim Fourteen

In claim fourteen, Petitioner alleges that he was denied a fair and impartial jury because, during deliberations, jurors ate lunch at a Subway Restaurant where members of the victims family were also seen to be eating and jurors were thereby "exposed to prejudicial comments" by the victim's family. *Petition* (ECF No. 1, PageID# 20.) In support of this claim, Petitioner attaches what appears to be a statement from one Mikesha Loney indicating that she observed jurors seated next to the family of the deceased while eating lunch at Subway. (ECF No. 9-1, PageID# 308.) Petitioner also attaches a statement from one Tierra Coates indicating that, during a lunch break in jury deliberations, she followed jurors and family members of the victim to the Subway Restaurant and overheard the victim's family mention that Petitioner had previously been acquitted in 2005 and that "Corey Hart isn't going to get justice and that Regis was going to get away!" (ECF No. 9-1, PageID# 310.)

Respondent argues that this claim is procedurally defaulted because Petitioner failed to raise the claim on direct appeal. *Return of Writ* (ECF No. 9, PageID# 91.) However, because Petitioner's claim appears to be based on matters that were not readily apparent from the face of the record, this Court will consider the merits of the claim.

The state appellate court rejected this claim (in the context of Petitioner's claim of the denial of the effective assistance of counsel in this regard) in relevant part as follows:

> [A]ppellant asserts he was deprived a fair trial because family members of the victim had lunch at the same restaurant as some of the jurors. Appellant raised this issue in his petition as his seventh claim for relief, asserting that, during a break in jury deliberations on May 13, 2011, several members of the jury, as well as members of the victim's family, had lunch at the same Subway restaurant

located across the street from the courthouse. In support, appellant submitted two letters, one from Mykesha Loney, the girlfriend of appellant who testified at trial and the other from Tierra Coates. In the letters, Loney and Coates both state that they observed family members of the victim and some of the jurors having lunch at a local Subway restaurant. In her letter, Loney states that this fact was related to counsel for appellant. The letter by Coates states that she and Loney followed these individuals toward the restaurant, and that "[w]e overheard" the victim's family and friends discuss appellant's previous case in which he was acquitted.

The trial court determined that this issue could have been raised on direct appeal, and we agree. Furthermore, apart from claims that members of the victim's family and several jurors were in the same restaurant or vicinity, the letters by Coates and Loney present no evidence of any conversations or improper communications between jury members and the victim's family. Mere speculation that jurors and family members may have spoken or that jurors may have overheard purported conversations is insufficient to show prejudice under *Strickland. See State v. Flynn*, 9th Dist. No. 06CA0096–M, 2007–Ohio–6210, ¶ 24, citing *State v. Downing*, 9th Dist. No. 22012, 2004–Ohio–5952, ¶ 27 ("A defendant must demonstrate actual prejudice, and speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel"); *State v. Halley*, 4th Dist. No. 10CA13, 2012–Ohio–1625, ¶ 25 ("the prejudice prong of *Strickland* must be affirmatively proven rather than simply assumed"). Accordingly, the trial court did not err in denying appellant's seventh claim for relief.

*State v. Dickerson*, 2013 WL 5451618, at *5-6.

"The Sixth Amendment, made applicable to the States through the Fourteenth Amendment, guarantees a criminal defendant a trial by an impartial jury." *Williams v. Bagley,* 380 F.3d 932, 943-44 (6th Cir. 2004)(citing *Morgan v. Illinois*, 504 U.S. 719, 726–27 (1992)".

"'In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.'" *Id*. (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). "Due process means a jury capable and willing to decide the case solely on the evidence before it[.]" *Roybal v. Davis*, -- F.Supp.3d --, 2015 WL 7961358, at *52 (S.D.Cal. Dec. 2, 2015).

However, the state appellate court found no evidence that jurors had been exposed to prejudicial comments, referring to Petitioner's allegations as "mere speculation" and without support. Petitioner has failed to rebut the presumption of correctness afforded these factual findings. *See* 28 U.S.C. § 2254(e)(1). The fact that jurors and members of the victim's family may have eaten lunch at the same restaurant does not establish that Petitioner was denied his right to a fair and impartial jury.

Claim fourteen is without merit.

Therefore, the petition for a writ of habeas corpus is **DENIED** and this action is hereby **DISMISSED**.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in this case.

**IT IS SO ORDERED.**


                                                  **/s/ GREGORY L. FROST**
                                                  GREGORY L. FROST
                                                  United States District Judge